## CROSS & BIZZELL *vs*. STATE BANK.

A writing purporting to be a bond, signed and sealed by a party with a blank left for the sum, which blank is afterwards filled and the writing delivered by one not authorized under seal, is not the deed of the party signing and sealing. The rule is otherwise as to promissory notes and bills of exchange,

Sealed and unsealed instruments have for many purposes become the same—both import a consideration, the one from the solemnity of its execution, and the other from its commercial character.

As securities, or evidence of debt, the forms of pleading and the statute of limitations only mark the difference.

The dignity of the deed is not lessened, but that of the note is elevated· The ancient division of contracts into those by parol and under seal, still remains.

The form and solemnity, in the execution of sealed instruments, has never been changed —and there is no difference between common money bonds and official bonds— both are deeds.

Writing, sealing and delivering are necessary to constitute a deed.

One cannot bind another by deed, without authority under seal.

Exceptions which tend to abolish the boundaries between sealed and unsealed instruments, and destroy the original features which distinguished them, if once introduced, no matter how plausibly, would be difficult to check.

There would be no use in preserving the form when the substance is gone.

THIS was an action of debt, determined in the Pulaski circuit court in May, 1844, before the Hon. JOHN J. CLENDENIN, one of the circuit judges. The Bank of the State sued Asa Thompson, Edward Cross, and Wm. H. Bizzell. The declaration contained one count on a joint and several bond, dated 7th May, 1840, in which Thompson, as principal, and the other defendants as securities, promised to pay the plaintiff $1,900, one hundred and twenty-five days after date, negotiable and payable at the principal bank at Little Rock, without defalcation for value received. Bizzell filed a general plea of *non*

*est factum*, on which issue was taken. Cross filed a special *non est factum* in substance as follows:—that the writing was not his deed, because that sometime in November, 1838, Thompson presented an obligation payable to the plaintiff, in which Thompson was principal and one B. was security for $600, at four months, and requested Cross to sign as co-security, which he did: the bond was discounted and the proceeds paid to T. After that he signed another obligation for renewal of the first, which was also accepted by plaintiff; after which and for renewal of the last, Cross signed another instrument having at the time no sum stated therein, or date, or time of payment; which last was afterwards filled up by some one unknown to Cross for $2,000, instead of $400, as was intended and understood by Cross at the time of signing. After this another blank was signed by Cross as he supposed in renewal of the supposed bond for $400, which was by some one unknown filled up with $1,900, and discounted for T's. benefit, which latter is the writing sued on. The plea concluded with a verification, and was sworn to by Cross. The bank demurred to this plea and assigned four causes—that it lead to several issues—contained a long story impertinent to the issue—no sufficient defence to the action—that it set up several distinct and separate matters. Demurrer sustained, and Cross said nothing further—a discontinuance as to Thompson who was not served, and trial by jury on issue to Bizzell's plea—verdict for plaintiff and final judgment against Cross and Bizzell. Bizzell, excepted during the trial, to several matters, and tendered a bill of exceptions setting out all the evidence and instructions given and refused, which was filed and made part of the record. The bill states that the plaintiff proved the signatures of Thompson, Cross and Bizzell, to the bond—that the bond was given in renewal of a previous one for $2,000. That the amount stated in the bond sued on was in the hand writing of a clerk of the bank—that it was the uniform practice when a note was to be renewed to fill a blank with the amount and send to the principal to be executed—that the name of the principal was always inserted, but those of securities were sometimes not. Witness did not know whether the amount in the note sued on was filled up before sent and executed or not. Here the plaintiff closed her case. Bizzell proved by deposition of a witness

residing in Pike county that, in the latter part of April or first of May, 1840, Thompson presented a note or bond with blanks left for date and amount, which he requested B. to sign as security, saying it was to renew another for $500. B. objected to sign a note in blank, but T. showed him the signature of Cross, and said the blank could only be used in renewing the former note, and could not be for a sum greater than $500. B. said he would not sign for any greater amount, and said he supposed it would be all right, as Judge Cross had signed it. The paper was a printed one with blanks for date and amount, payable at the principal bank at Little Rock. B. then signed it below the name of Cross; there was no other conversation at that time or at any other time, between Thompson and B. to the knowledge of witness in relation to that subject. T. got on his horse and rode away for Washington, Hempstead county, and was not in Bizzell's neighborhood till June or July after. It was at the time, a distinct understanding and agreement between Thompson and Bizzell, that the paper should be used to renew the old note, and not be filled up for a greater amount than $500. It was also proved by the defendant the note sued on was given in renewal of one in which all the debts of Thompson had been consolidated. This is substantially the whole testimony offered or received. The plaintiff moved that the jury be instructed that a writing obligatory signed in blank operates as a letter of credit, and gives the holder a right to fill it up for any amount; that bonds for the payment of money are assignable, and the same rule as to filling up blanks which applies to promissory notes, is applicable to bonds signed in blank; that an instrument, whether bond or promissory note, while in *fieri* may be filled up by the holder as to sum and date. These instructions were all given—to all of which the defendant excepted. The defendants also moved for instructions, all of which were refused and they excepted; but they are not here given because the case turned upon those asked by the plaintiff. The case came here by writ of error.

*Ashley & Watkins, Cummins,* and *Trapnall & Cocke,* for plaintiff. Cross' bill sets forth the fact of the execution of the previous bonds, but if that is, (as we contend) wholly immaterial, it will not vitiate the

plea, but will be rejected and treated by the court as surplusage—surplusage will not vitiate *even on special demurrer.* 1 *Ch. Pl.* 262. An issue upon the facts of the execution of the previous bonds, would be wholly immaterial, and would not lead to a determination of the suit—the only material and issuable fact in the plea is as to the fraud practised in relation to the bond sued on.

The objection of a majority of the court in *The United States vs. Linn et al.* 1 *Howard* 104, to Duncan's special plea, cannot apply in this case, because Cross avoids that objection, by the allegation, that the bond was filled up with a larger sum, *without his knowledge or consent by some person unknown to him.*

The circuit court erred in giving the instructions asked for by the Bank at the trial of the issue on Bizzell's plea. *United States vs. Linn et al.* 1 *Howard* 104. *Byles on Bills,* p. 48, *in Law Library, p.* 33. *McKee vs. Hicks,* 2 *Dev. N. C. Rep.* 379. 2 *Dev. & Battle's N. C. Reps. p.* 318. *Pullen vs. Shaw,* 3 *Dev. p.* 238. *Hurlstone on Bonds,* 120 *in* 9 *Law Library* 63. *Paulding et al. vs. The U. S.* 2 *Cond. Rep.* 92. *The United States vs. Nelson & Mayers,* 2 *Brockenbrough* 64. *Drake vs. Johnson, Hardin* 218. 3 *Marshall* 163. 3 *J. J. Marshall* 548. 2 *Bibb.* 425.

The case in 2 *Brockenbrough* 64, expressly decides that the distinctions between writings obligatory and promissory notes are not abrogated, and that courts are bound to observe them, notwithstanding by staute, unsealed, in some particulars, are placed upon a footing with sealed instruments; and that the rule applies as well to bonds for the direct payment of money as to official or other bonds.

*Pike & Baldwin,* on the same side. A writing purporting to be a bond signed and sealed by a party, in which a blank is left for the sum, to be afterwards filled, and the blank is afterwards filled, and the paper delivered, but not in the presence of the party signing, nor by any person having authority under seal, is not the bond of the party so signing and sealing. *Graham vs. Hall,* 3 *Iredell* 300.

He who attempts to execute or consummate a deed, whether for money or other property, as agent for another, must be armed with an authority under seal.—*Id.*

Cross & Bizzell *vs.* State Bank.

In every good bond there must be an obligor and an obligee, and a sum, in which the former is bound. *Id. Davenport vs. Slight*, 2 *Devereaux & Battle* 381, is a stronger case than the one at bar.

*Hempstead & Johnson*, contra. There is no rule better established than that he who signs his name to a blank piece of paper with the intent that it be filled up will be liable, although the person entrusted therewith violates the confidence reposed in him by filling it up with another sum, or using it for another purpose than the one intended; the maxim of law being that "he who trusts most shall suffer most." 3 *Stewart Alabama Rep.* 247. 8 *Porter Rep.* 300. *Collins vs. Emmett*, 1 *H. Bl. Rep.* 313. *Russell vs. Langstaffe, Doug.* 496. *Snaith vs. Mingay*, 1 *M. & S.* 87. *Crutchley vs. Mann*, 5 *Taunt.* 529. *Crutchley vs. Clarence*, 2 *M. & S.* 90. *Violett vs. Patton*, 5 *Cranch* 142. *Mitchell vs. Culver*, 7 *Cowen* 336. *Putnam vs. Sullivan*, 4 *Mass. Rep.* 45.

Bonds for the payment of money are assignable under our law— they are not at common law. They are with us instruments of commerce—they are not in England; and hence the same reason which holds a man liable who signs a *blank note* will hold him liable where he signs a *blank bond.* There is no magic in a word. *Vide Master vs. Miller*, 4 *T. R.* 320. *S. C.* 1 *Anst. Rep.* 226, 229.

A party executing a bond, knowing that there are blanks in it to be filled up by inserting particular names or things, must be considered as agreeing that the blanks may be filled after he has executed the bond. *Smith vs. Crooker*, 5 *Mass. R.* 539. *Hart vs. Adams*, 6 *Mass. R.* 521. *Markham vs. Gomaston, Moore* 547. *Paget vs. Paget*, 2 *Ch. Rep.* 187. *Zouch vs. Clay*, 2 *Vent.* 185. 2 *Levinz* 32. *Nelson vs. Dubois*, 13 *J. R.* 175.

On navy bills, which are not in their nature assignable nor negotiable, the common practice is this: a letter of attorney to receive the money (which is a deed under seal) is made with a blank for the name: this is always sold with the navy bill, and thus they are negotiated from hand to hand, till any purchaser chooses to fill the blank with his own name and recover the money. *Master vs. Miller*, 1 *Anst.* 229.

So it is the common practice of sheriffs, in taking bonds for appearance, to leave blanks for the names of the sureties where the principal has executed the bond, and to fill up the blanks with the names of the sureties when they are procured, and this without objection. 1 *Vent.* 185. *Zouch vs. Clay*, 2 *Dev.* 35. *Smith vs. Croaker*, 5 *Mass. Rep.* 539.

So it is the practice in the custom-house bonds at the time they are executed, to leave a blank for the dates when ascertained, and the blanks are afterwards filled with the amount of the duties without prejudice to the bond, the obligor being considered as consenting that the blank shall be thus filled up. *Hunt vs. Adams*, 6 *Mass. Rep.* 521. 1 *Anstruther* 229, *n.* 1. 1 *Vent.* 185. 2 *Lev.* 35. *Moore* 547. *Sanderson vs. Symonds*, 1 *B. & B.* 426.

The case of *Texira vs. Evans*, 1 *Anst.* 229, note, was where a party executed a bond with blank spaces for the name and sum, and sent an agent to receive money on it, and the obligee having but half the sum required, the agent accordingly filled up the blank with the sum and the obligee's name and delivered the bond to him, on a plea of *non est factum*, the bond was considered well executed. *Vide Hurl. on Bonds*, 121. *Adams vs. Bateson*, 3. *M. & P.* 339.

The case of *Speake vs. The United States*, 9 *Cranch* 28, in determining that parol evidence of assent to altering or filling up a bond may be received, undoubtedly goes far towards deciding that an obligation may be created originally by virtue of an authority which is not expressly given, but implied from the sealing and delivery of a paper which in its existing state can avail nothing, and it is probable that the same court may completely abolish the distinction in this particular, between sealed and unsealed instruments. *Per* MARSHALL, C. J., in *U. S. vs. Nelson*, 2 *Brock.* 74.

Doubtless, if an obligee alters a *perfect* instrument in a material, and perhaps, in an immaterial part, without the *express* consent of the obligor; it is on the penalty of destroying the contract and releasing the parties; consent cannot be implied with regard to an instrument perfect at the time of execution; but while it is *in fieri* and something is yet to be done to make the instrument available; signing and sealing is an implied authority; and by bearing in mind this obvious dis-

Cross & Bizzell *vs.* State Bank.

tinction, cases seemingly conflicting can be easily reconciled. *Cummins vs. Breneman, Ms. case. Cutts vs. U. S.* 1 *Gall.* 69. 6 *Dana. Watson vs. Booth,* 5 *M. & S.* 223. *Hurlstone on Bonds,* 122.

*By the Court,* SEBASTIAN, J. The question to be decided here is, whether a paper signed and sealed with blanks, and filled up without, or in violation of authority, from the defendants, in a material point, can be considered as their deed? Whether it was filled up and delivered by Thompson, one of the joint obligees, or by an agent and clerk of the bank, makes no difference in principle under the view which is here taken. Were it the case of a promissory note or bill of exchange, there would be no difficulty, and the question would be of easy solution. The rule is well established that the signing a blank paper confers upon the holder an unlimited letter of credit, and that an abuse of the confidence, which it imports, affords no defence to the maker of it. This was partly a rule of policy, founded on the great convenience and facility they afford to commerce, and on the necessity of removing all obstacles to their free and easy circulation, and of inspiring confidence in the value of them as commercial securities. And, while the growing importance and increasing necessities of commerce have made not only these, but also bonds and other sealed instruments, in a great measure, subservient to its purposes; yet we are not to forget the great distinguishing features in their original creation. These originating in a state of things, which has long since ceased, have yet become so fixed and engrafted in the law, that the task of reform must be left to the Legislature, while we declare the law as it is written. It is true that these sealed and unsealed instruments, for many purposes, have become the same. They both import a consideration; the one, from its commercial character, and the other, from the solemnity of its execution. As securities or evidence of debt, there is nothing now, but the forms of pleading and the statute of limitations to mark the difference between them. These changes in the law have not lessened the dignity of deeds, but have elevated the other to the same grade in importance. Yet the ancient divisions into contracts by parol and under seal, is still recognized, and remains the same. Promissory notes are still known as parol contracts, and

the distinction once attempted between ordinary verbal and written contracts has never been established. If unsealed, such contracts, whether written or unwritten, are still preserved in their original class of parol agreements. It was upon this ground that they might be created by parol or verbal authority. For this reason too, we can see no difference between ordinary money bonds and official bonds. The one is as much a deed as the other; and while promissory notes and sealed instruments for many purposes of commerce, have become assimilated, it must be remembered that the forms and solemnities of their execution have never been changed. By the ancient law three things were necessary to constitute a deed—writing, sealing and delivery—and when executed, it was held absolutely to estop and conclude the party. This conclusiveness arose from the great deliberation and reflection which were supposed to accompany each successive step in the slow process necessary to constitute it a final act and deed. The maxim that no one could bind another by deed, unless by authority under seal, was but a corollary to this principle; for, as the want of either act of deliberation, rendered the deed of no obligation, so when it was done by an attorney, the assent of the obligor, to be bound, should be shown by an act of equal solemnity; otherwise a solemn instrument of high obligation would be made to depend upon all the uncertainty and frailty of parol testimony. 1 *Com.* 777.

The rule requiring the deed to be in writing, seems to imply, that the obligation goes no further than the writing. This appears from *Perkins, sec.* 118. "If a common person seal an obligation, or any other deed, without any other writing in it, and deliver the same unto a stranger, man or woman, it is nothing worth, notwithstanding the stranger make it to be written, that he who sealed and delivered the same to him, is bound unto him in £20." There being no sum of money stated in the bond, when it was sealed, defendants were no more bound by the instrument in that shape, than if it had been an entire blank. In this case it would have been unavailable, unless by a re-delivery after the blanks had been filled. The question then is, whether the defendants have authorized any person to fill up the blanks in such a manner as to create an obligation which did not exist

before. Does the signing it with blanks, which must be filled up to make it complete, amount to authority by implication, that they may be so filled, and thus bind the party? This would seem to be decided by what is before said from Perkins. That case seemed to imply that the person to whom it was delivered, had authority to fill up the blank with an obligation, yet it was adjudged it could not be done. This same authority is referred to and cited as law in *Shep. Touch.* 54, and 4 *Com. Dig. Fait (A. 1.)* The same principle is to be extracted from *Roll. R.* 39, 40, where a bond being made to C with blanks left for the christian name and addition of the obligee, which were filled up afterwards with the assent of the parties, it was held that the bond was void. 2 *Stark. Ev.* 373. So, in general, if blanks be left at the time of sealing and delivery, which are afterwards filled up, the deed is thereby avoided, for it is no longer the same contract which was sealed and delivered. *Ib.* 2 *Roll. Abr.* 29. These cases show that parol authority will not answer for that purpose, even where there is a *necessary implication* arising from the purpose of the blank to be filled up, as in Facman's case cited from *Roll. Abr.* above. These decisions establish the ancient doctrine, and it has been preserved, notwithstanding some inroads which have been made upon it in a series of modern decisions, in its original purity and simplicity. Thus, in *Powell vs. Sheriff of Middlesex,* 3 *Camp.* 18½, which was upon a bail bond, executed by defendant, who being in a great hurry at the time, left the condition to be filled up, which was done, it was held by Lord Ellenborough, that the bond was void; and in that case he said: "a man may render himself liable as a party to a promissory note or bill of exchange, by signing his name on a blank stamp, but there are certain solemnities indispensable to the validity of deeds. The defendant never did execute a bond with such a condition." The rule thus laid down in *Perkins and Shepherd,* has been followed in many American cases. In 1 *Yerger* 69, it was held that a bond signed and sealed in blank, with a verbal authority given at the time to fill it up, is void unless re-delivered; and the same principle was again recognized by that court in 1 *Yerger* 149. In Kentucky the adjudications have re-asserted the doctrine in *Lockhart vs. Roberts,* 3 *Bibb* 362, in which it is treated as a familiar and well settled principle; and in

*Bank of Limestone vs. Pennick*, 5 *Monroe*, the doctrine is again recognized, for which the same authority from Perkins is cited. It has been so ruled in Virginia, 1 *Washington Rep.* 73 and 4 *Randolph* 176. In this last case the court condemned the doctrine, that the signing and delivery of a bond in blank is an implied authority to fill it up. The case of *Byeer vs. McClanahan*, 6 *Gill. & Johns.* 250, is full to the same point, and so is 1 *Hill S. C. Rep.* 267.

Should it be supposed there is any difference in principle between a filling up by the obligee after delivery, or by an agent of the obligors before, the case of *Davenport vs. Slight*, 1 *Dev. & Battle Rep.* 381, settles the point. There the defendant executed and delivered a bond in blank to an agent, with a verbal authority to fill the blank and deliver it to the obligee, and this was held to be of no obligation, although it was proven that he had subsequently declared, the bond not being present, that he approved the delivery. In that case RUF-FIN, Judge, considered the innovations which had been made upon the old rule, as highly dangerous in their consequences, and as not warranted by sound authority. In the *United States vs. Nelson & Myers*, 2 *Brock. Rep.* 68. Chief Justice MARSHALL reviewed all the decisions militating against the rule as originally established, and held the doctrine as laid down in the foregoing cases to be correct. This was also the case of blanks filled up after signing and sealing, in which the defendants knew what was to be inserted. Upon this the court say "There are certain differences in law between sealed and unsealed instruments, which make it difficult to apply the principles of one species of contract to the other—all unsealed instruments being considered as verbal contracts, they require neither writing nor delivery. They were not governed by those technical rules which were founded in the necessity of writing and delivery." In none of the cases which have been cited was any distinction taken or noticed between ordinary money bonds and official, and many of them were cases upon instruments under seal in form of promissory notes. Such were the cases in 3 *Bibb*, and 5 *Monroe;* and of the same class is the case of *Ayers vs. Hurness*, *Ohio Condensed Reports*, 167, which affirmed the principle as settled by the authorities before cited. We regard

the principle, therefore, as too well established to admit of doubt as to its correctness.

There have been, however, several cases determined, in which qualifications and innovations upon the law as settled by the earlier decisions, have been made. These are all founded upon the cases of *Texira vs. Evans, in Anstruther* 228, *and Markham vs. Gomaston,* as reported in *Moore* 547. The first was upon a bond in which the blank for the name of the payee and the sum were filled up by an agent, who had been entrusted with it in that shape, to obtain a loan of money. The other was the case of a blank left for the christian name and addition of the obligee, and in both cases the bonds were held good, the obligors having given their consent to the alteration. Upon these decisions were founded *Zouch vs. Clay,* reported in 1 *Ventris* 185, and 2 *Levinz* 35, and *Paget vs. Paget,* in 2 *Ch. Rep.* 187. These two last cases establish the principle that an alteration of a bond after delivery in a material part by consent of parties, or the filling up a blank without such consent, will be binding without a re-delivery by the obligor. These cases were all decided subsequent to the time that the rule was laid down in Shepherd and Perkins, and previously to *Powell vs. Sheriff of Middlesex,* 3 *Camp.* 182, by which they were virtually overruled. These departures from the ancient rule have been followed in 4 *Johns. Rep.* 59. 6 *Cowen* 60. 8 *Cowen* 118. 5 *Mass. R.* 539. *Smith vs. Crooker,* 6 *Serg. & R.* 308. 13 *ib.* 190, *and* 17 *ib.* 438, *and* 1 *Dallas* 67. These authorities all proceed upon the ground that the alteration is made either by consent expressed, or by necessary implication; and where the authority has been pursued. None of them adopt the principle applicable to promissory notes, or that the instrument would be binding where the authority is exceeded or abused. Upon the whole, the weight of authority appears to be decidedly in favor of the principles as we have declared them, and notwithstanding the respectability of the decisions militating against the ancient rule, we cannot regard them as successful innovations and exceptions engrafted upon it. They certainly tend to abolish boundaries between sealed and unsealed contracts, and destaoy the original features which marked and distinguished them in their creation. If an exception, however plausible, is once introduced,

we cannot see where it is to stop, or why all of the solemnities required in the constitution of a deed, may not as well be performed under parol authority, as any one of them. There is no use in preserving the form when the substance is gone. In this conflict of authority, we prefer to follow, rather than unsettle the long established doctrines.

As the instructions of the circuit court were unwarranted by the law, the judgment must be reversed, and the cause remanded with instructions to overrule the demurrer to Cross' plea, and proceed, &c.